16-3357-cv(L)
*Lexjac, LLC  v. Bd. of Trs. of Muttontown*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of September, two thousand seventeen.

PRESENT:    RALPH K. WINTER,
            DENNY CHIN,
            SUSAN L. CARNEY,
                        *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LEXJAC, LLC, RICHARD ENTEL,
            *Plaintiffs-Counter-Defendants-Appellants*,

                        v.                              16-3357-cv (L)
                                                        16-3844-cv (Con)

THE BOARD OF TRUSTEES OF THE
INCORPORATED VILLAGE OF MUTTONTOWN,
INCORPORATED VILLAGE OF MUTTONTOWN,
            *Defendants-Counter-Claimants-Cross-*
            *Defendants-Appellees*,

CARL JUUL-NIELSON, J. RANDOLPH
BARTHOLOMEW, STEVEN FINE,
PAT MILLER, individually and in their official
capacity as Member of the Board of Trustees of the

Incorporated Village of Muttontown, JULIANNE W. BECKERMAN, individually and as Mayor of the Incorporated Village of Muttontown,
        *Defendants-Counter-Claimants*,

BONNIE O'CONNELL,
        *Defendant-Counter-Claimant-*
        *Cross-Claimant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFFS-APPELLANTS:        E. CHRISTOPHER MURRAY, Ruskin Moscou Faltischek, P.C., Uniondale, New York.

FOR DEFENDANTS-APPELLEES:        STEVEN G. LEVENTHAL, Leventhal Mullaney & Blinkoff, LLP, Roslyn, New York.

Appeal from the United States District Court for the Eastern District of New York (Lindsay, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-counter-defendants-appellants Lexjac, LLC ("Lexjac") and Richard Entel appeal the district court's October 27, 2016 judgment granting summary judgment in favor of defendants-counter-claimants-cross-defendants-appellees the Board of Trustees of the Incorporated Village of Muttontown (the "Board") and the Incorporated Village of Muttontown (the "Village"), dismissing plaintiffs' complaint and directing plaintiffs to cancel their deed and convey title of a 1.1 acre parcel of land ("Smallacre") to the Village.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

2

On July 2, 1969, the Village Planning Board approved a 28-home residential subdivision plan proposed by Foreal Homes, Inc. ("Foreal"), conditioned upon Foreal's offer to dedicate Smallacre to the Village as parkland, pursuant to N.Y. Village Law § 7-730(4). Foreal irrevocably offered Smallacre to the Village on July 27, 1972. The offer was recorded on August 22, 1972. The Village, however, did not accept the offer until 2007, as described further below.

Lexjac, Entel's wholly owned company, purchased Smallacre, which abutted Entel's home, from Foreal for $90,000 in December 2003. On October 17, 2005, at plaintiffs' request, the Village formally declined Foreal's offer of dedication (the "2005 Resolution"), giving plaintiffs unencumbered title to Smallacre. At the time of the vote, Entel was a member of the Village's Board of Trustees but recused himself from the vote. On July 10, 2007, after Entel was defeated in a mayoral race by incumbent defendant Julianne Beckerman, the new Board of Trustees passed a resolution rescinding the 2005 Resolution and formally accepting the offer of dedication (the "2007 Resolution").

Plaintiffs filed this action in 2007, alleging, *inter alia*, that their due process and equal protection rights were violated by the 2007 Resolution. The district court (Seybert, *J.*) granted in part plaintiffs' motion for summary judgment, holding that the 2005 Resolution did not constitute a contract and that Entel had complied with § 809 of the New York General Municipal Law (the "NYGML") by disclosing his interest in

3

Smallacre and abstaining from voting on the resolution. *Lexjac, LLC v. Inc. Vill. of Muttontown*, No. 07-CV-4614 JS, 2011 WL 1059122, at \*4-5 (E.D.N.Y. Mar. 18, 2011). The district court subsequently ordered the Village to deed Smallacre back to plaintiffs subject to plaintiffs' grant of a conservation easement preventing development of Smallacre.

The case proceeded to trial on damages before Magistrate Judge Arlene R. Lindsay on the consent of the parties, and the jury returned a verdict of $1,450,000 for plaintiffs. Defendants appealed, and we concluded that the 2005 Resolution constituted a contract, vacated the district court's grant of partial summary judgment, and remanded for the district court to consider whether the 2005 Resolution was null and void pursuant to NYGML §§ 801 and 804 notwithstanding Entel's recusal. *See Lexjac, LLC v. Beckerman*, 616 F. App'x 435, 438 (2d Cir. 2015). On September 1, 2016, the district court granted defendants' motion for summary judgment, holding that the 2005 Resolution was null and void. Plaintiffs timely appealed. We review a district court's grant of summary judgment *de novo*. *Hill v. Del. N. Cos. Sportservice, Inc.*, 838 F.3d 281, 287 (2d Cir. 2016).

Section 801 provides that

> Except as provided in [§ 802], (1) no municipal officer or employee shall have an interest in any contract with the municipality of which he is an officer or employee, when such officer or employee, individually or as a member of a board, has the power or duty to (a) negotiate, prepare, authorize or approve the contract or authorize or approve payment thereunder . . . .

4

NYGML § 801. If a municipal officer has such an interest in a contract "willfully entered into by or with a municipality," the contract is "null, void, and wholly unenforceable." NYGML § 804.

Four questions are presented: first, whether § 801 was implicated here; second, whether Entel's recusal from the vote on the 2005 Resolution obviated any violation; third, whether the Village waived any violation; and finally, whether plaintiffs were entitled to notice and an opportunity to be heard before the 2007 Resolution was passed. We address each issue in turn.

1.     **Applicability of NYGML § 801**

As a board member, Entel had the power to "negotiate" and "approve" the 2005 Resolution. Entel had the power and the duty, as a member of the Board of Trustees, to negotiate, prepare, authorize, or approve contracts, including contracts to convey interests in real property implemented through resolutions. *See* N.Y. Village Law § 4-412(1)(a) ("[T]he board of trustees of a village . . . may take all measures and do all acts, by local law, not inconsistent with the provisions of the constitution . . . which shall be deemed expedient or desirable for the good government of the village."); *accord Karedes v. Colella*, 740 N.Y.S.2d 526, 528 (3d Dep't 2002), *rev'd on other grounds*, 100 N.Y.2d 84 (2003) ("The power to contract with respect to the management of village property is vested in the Board.").

Although title to Smallacre was taken by Lexjac, as Entel was the sole owner of Lexjac, he had an interest in the transaction. NYGML § 800(3) ("[A] municipal officer or employee shall be deemed to have an interest in the contract of . . . (d) a corporation any stock of which is owned or controlled directly or indirectly by such officer or employee."). Accordingly, § 801 was implicated.

**2. Entel's Recusal**

Plaintiffs argue that the 2005 Resolution is not void under §§ 801 and 804 because Entel recused himself from voting on it. NYGML § 802 enumerates circumstances in which the § 801 prohibition on conflicts of interest does not apply, and recusal is not among them. Moreover, § 801 was intended to eliminate the mere "possibility of wrongdoing." *Dykeman v. Symonds*, 388 N.Y.S.2d 422, 426 (4th Dep't 1976). Accordingly, it is irrelevant whether the board member actually exercises his or her power to negotiate or approve the agreement. *See Dykeman v. Symonds*, 380 N.Y.S.2d 567, 568 (Sup. Ct. Monroe Cty. 1976), *aff'd*, 388 N.Y.S.2d 422 (concluding that respondent could not concurrently serve as a county legislator and motor vehicle supervisor, and noting that "[n]either the fact that she has refrained in the past from participating in negotiations with the collective bargaining agent, nor that she is willing in the future to abstain from voting on any and all salary matters that come before the legislative body relieves her of the 'power or duty' referred to in section 801 of the General Municipal Law"); Opinion No. 77-714, 1977 WL 4486, at *1 (N.Y. Comp. Oct. 7,

1977) ("[I]t is immaterial that the trustee dissociates himself from board proceedings relative to the transaction. The § 801(1) prohibition stems from the power or duty of the trustee to approve or authorize the contract, etc., and it is irrelevant that he refrains from the exercise of that power or the performance of such duty."). Even if Entel recused himself from the vote, he was in a position to influence the Board's decision by virtue of his board membership. Thus, Entel's recusal does not cure the violation.

Plaintiffs also argue that Entel did not act willfully within the meaning of § 804 because he did not act in bad faith or believe that the 2005 Resolution would violate § 801. Although the Article 18 of the NYGML does not define "willfully," the New York State Comptroller addressed its meaning in a 1985 opinion. Considering whether a town board should approve a voucher for services rendered by the spouse of a town supervisor, the Comptroller concluded:

> Section 804 of the General Municipal Law provides that "any contract willfully entered into by or with a municipality in which there is an interest prohibited by this article shall be null, void and wholly unenforceable." In our opinion, a contract is "willfully" entered into by a party if, at the time of making the contract, he has knowledge of facts which, under General Municipal Law, Article 18, constitute a prohibited interest in the contract on the part of a municipal officer or employee. . . . Clearly, the former supervisor's spouse was aware that her husband was the supervisor of the town when she agreed to prepare the report for compensation. As a result, the claim of the former supervisor's spouse . . . is rendered null and void by . . . § 804 and should not be paid by the town.

Opinion No. 85-9, 1985 WL 25802, at *1 (N.Y. Comp. Feb. 14, 1985) (citing *Landau v. Percacciolo*, 412 N.Y.S.2d 378 (2d Dep't 1978), *aff'd*, 50 N.Y.2d 430 (1980)). Entel knew the

7

relevant facts at the time the contract was formed: It is undisputed that Entel, via Lexjac, pursued the contract with the Village knowing that he was both a trustee and the sole owner of Lexjac. Therefore, under § 804, the 2005 Resolution was "[a] contract willfully entered into" by Entel "in which there is an interest prohibited by [§ 801]," as discussed above, and the contract is void. NYGML § 804.

We reject plaintiffs' argument that the contract is void under § 804 only if Entel was aware that he was violating § 801. Unlike § 804, NYGML § 805, which makes certain violations of § 801 misdemeanors, has the added requirement that the violation be "knowing." *See* NYGML § 805 ("Any municipal officer or employee who willfully and knowingly violates the foregoing provisions of this article shall be guilty of a misdemeanor."). That language does not appear in § 804. Accordingly, we are not persuaded that a contract is void under § 804 only when a party to the relevant contract knows that the contract he or she is entering into violates § 801.

Thus, for the reasons stated above, the 2005 Resolution is void under NYGML §§ 801 and 804.

### 3. Waiver

Plaintiffs also argue that the Village waived its claim that the 2005 Resolution is void because the 2007 Resolution acknowledged the 2005 Resolution without specifying that it was void. We disagree. The New York Court of Appeals has observed that § 804 bars waiver of conflicts under § 801. *See Landau*, 50 N.Y.2d at 434

8

("As to contracts in which . . . an interest [prohibited by § 801] exists, section 804 of the General Municipal Law works as a statutory nullification, thereby providing for municipal taxpayers the protection of a bar to any waiver of the prohibited conflicts of interest through consent of the governing body or authority of the municipality."). Plaintiffs cite no authority to support the proposition that a contract prohibited by §§ 801 and 804 can be ratified by subsequent acts of the parties.

####      4.      Procedural Due Process

Finally, plaintiffs argue that because Lexjac was the fee owner of Smallacre, they were entitled to notice and an opportunity to be heard before the offer of dedication could be accepted. "A lapse of time does not extinguish an offer of dedication, which may be accepted at any time prior to a valid revocation by all interested parties . . . and remains enforceable against subsequent purchasers." *Underhill Ave. Corp. v. Vill. of Croton-on-Hudson*, 919 N.Y.S.2d 67, 69-70 (2d Dep't 2011). As the district court noted, "by the time Lexjac purchased the land from Foreal, the parties' respective interests in Smallacre had already been unequivocally determined by the [state] courts," which rejected Foreal's attempt to revoke the offer of dedication and concluded that Foreal held Smallacre subject to the offer of dedication. *Lexjac, LLC v. Bd. of Trustees of the Inc. Vill. of Muttontown*, No. CV 07-4614 (ARL), 2016 WL 8138987, at *8 (E.D.N.Y. Sept. 1, 2016); *see also Foreal Homes, Inc. v. Inc. Vill. of Muttontown*, 71 N.Y.2d 821, 822 (1988).

9

Plaintiffs had at least constructive knowledge of the offer of dedication at the time they acquired Smallacre from the Village: the offer was recorded with the County Clerk, and the Village Attorney expressly clarified to plaintiffs by letter that plaintiffs' purchase of Smallacre would be "subject to the outstanding offer of dedication." App'x 70. Accordingly, they were not entitled to any additional process before the 2007 Resolution was passed.

We have considered all of plaintiffs' remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk